UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| THOMAS C. AMERAL, | |
|---|---|
| Plaintiff, | NO. CV-06-2566-LRS |
| vs. | ORDER DENYING PETITIONER'S MOTION TO AMEND PETITION AND DENYING 28 U.S.C. §2254 MOTION |
| M. VEAL, et al., | |
| Defendants. | |

BEFORE THE COURT is Petitioner's Writ of Habeas Corpus, Ct. Rec. 1, filed on November 16, 2006; and Petitioner's Amended Petition, Ct. Rec. 11, filed on September 10, 2007, which the court construes as a motion to amend pursuant to Fed.R.Civ.P. 15(a)(2). This case was reassigned to the undersigned judge in the Eastern District of Washington on November 24, 2008. Ct. Rec. 18.

**I. BACKGROUND**

Petitioner Thomas Ameral is currently serving a nine year sentence in a California state prison for making criminal threats, misdemeanor contempt of court, and having sustained a prior strike and prior serious felony conviction. Ct. Rec. 12. Petitioner timely appealed to the California Court of Appeals, Third Appellate District (*People v. Ameral*, Case No. C049771). Id. On May 10, 2006, the California Court of Appeals affirmed Petitioner's conviction and

ORDER - 1

sentence.

Petitioner timely petitioned the California Supreme Court for review. On July 19, 2006, review was denied. Id. On November 21, 2006, Petitioner filed a Petition for Writ of Habeas Corpus in the Sacramento County Superior Court, No. 06F10130, alleging that his constitutional rights were violated because the state court incorrectly calculated his conduct credit when it sentenced Petitioner. Id. The petition was denied. Petitioner does not assert this claim (credit calculation) in his initial or amended federal petition before this court.

On November 16, 2006, Petitioner filed a habeas petition in this matter ("first petition"). On January 29, 2007, Respondents filed an answer to the petition. On June 7, 2007, Petitioner filed a Petition for Writ of Habeas Corpus in the Sacramento County Superior Court, No. 07FO5689, alleging that his constitutional rights were violated under the Double Jeopardy Clause. Id. On July 26, 2007, the superior court denied the petition on the procedural ground that Petitioner should have raised his claim on appeal, and, to the extent that the petition raised a claim of ineffective assistance of appellate counsel, denied the petition on the merits. Id.

On September 10, 2007, Petitioner filed an amended federal petition in Case No. CIV S-07-0871 FCD DAD P ("second petition"). On November 9, 2007, respondents filed a motion to dismiss. Petitioner attached a Petition for Writ of Habeas Corpus to his opposition to Respondent's motion to dismiss, which he contends was filed in the California Supreme Court. Id. In the state petition, appellant

ORDER - 2

asserts a Double Jeopardy Clause claim. Id. Respondents, however, indicate that no such petition appears to have been filed with the California Supreme Court.

On May 20, 2008, the magistrate judge in the Eastern District of California issued Findings and Recommendations recommending that the motion to dismiss be denied, the second petition be construed as a motion to amend Petitioner's pending habeas petition in this case, and the clerk be directed to refile the petition in this case. On July 15, 2008, the Findings and Recommendations were adopted by the district court judge. On that same date, Petitioner's second petition was filed in this matter.

**II. DISCUSSION**

**A. First Petition for Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

ORDER - 3

different result. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The term "unreasonable application" has a meaning independent from that of the term "contrary to." A state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id.

A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making an "'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This is a "'highly deferential standard for evaluating state court rulings'" and "'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003)(citations omitted).

In determining whether a state court decision is "contrary to" or an "unreasonable application" of federal law under §2254(d)(1), the federal court looks to the last reasoned state court decision as the basis for the state court judgment. *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). In the captioned matter, the last reasoned state court decision is that rendered by the California Court of Appeal, Third Appellate District, in *People v. Ameral*, 2006 WL 1280670 (May 10,

ORDER - 4

2006). The California Supreme Court subsequently and summarily denied Petitioner's petition for review in a decision filed July 19, 2006.

**1. Wheeler/Batson[1] Claim (Ground 1)**

On September 1, 2004, the parties conducted jury voir dire and exercised their peremptory challenges. Ct. Rec. 9 at 10. The prosecutor excused a total of nine prospective jurors pursuant to peremptory challenges, including three African-Americans, B., W., and D.W. Id. At least one African-American served on the jury. Id. Petitioner, who is part African-American, asserts that the prosecutor's use of peremptory challenges to three African-American prospective jurors violated his constitutional rights pursuant to Batson. Respondents concede this claim is properly exhausted. The California Court of Appeal addressed the merits of this claim, and it is presumed that the California Supreme Court denied the claims for the reasons addressed by the Court of Appeal (Lod. Docs. 7 and 9). *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)(discussing the presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground).

The California Court of Appeal analyzed the claim as follows:

> At the time of trial, California courts analyzed *Wheeler/Batson* motions under the following standard: "A party's use of peremptory challenges is presumed to be valid. The presumption is rebutted if the other party establishes a prima facie case that jurors were challenged solely on the basis of their presumed group bias.

---

[1] *People v. Wheeler* (1978) 22 Cal.3d 258 (Wheeler); *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69] (Batson).

ORDER - 5

[Citation.] To establish a prima facie case, a party "'should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.'" [Citation.] [¶¶] . . . . [¶¶] Once a prima facie case has been shown, the burden shifts to the other party to provide race-neutral explanations for each of the disputed peremptory challenges. [Citations.] If the court finds, as to any of the challenges, that the burden of justification is not sustained, the presumption of validity is rebutted." (*People v. Williams* (1997) 16 Cal.4th 153, 187; italics added.) Furthermore, under California law at that time, a defendant could not use comparative analysis (i.e., comparing the traits of prospective jurors cited by the prosecutor as grounds for exclusion to those of nonexcluded jurors) to show impermissible discrimination. *(People v. Ervin* (2000) 22 Cal.4th 48, 76; *see People v. Johnson* (2003) 30 Cal.4th 1302, 1306, 1322-1326 [appellate review on cold record].)

After trial in this case, the United States Supreme Court disapproved the "strong likelihood" test and held that a prima facie case requires only "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." (*Johnson v. California* (2005) 545 U.S. 162 [162 L.Ed.2d 129 at p. 139].) The court also held that comparative analysis of excluded and nonexcluded jurors was appropriate in assessing the prosecutor's justifications. (*Miller-El v. Dretke* (2005) 545 U.S. ---- [162 L.Ed.2d 196] ( Miller-El.) However, Miller-El did not decide whether a defendant may use comparative analysis on appeal after having failed to do so in the trial court, and the California Supreme Court has so far declined to resolve that question. (*People v. Gray* (2005) 37 Cal.4th 168, 189 (Gray) [noting issue without deciding it, then discussing defendant's showing on merits]; *People v. Ward* (2005) 36 Cal.4th 186, 200-201 (*Ward*) [same].)

The parties dispute the effect of the trial court's finding that defendant did not make a

ORDER - 6

prima facie case. The People assert the court's finding was correct and we should therefore not reach the question whether the prosecutor gave proper reasons for challenging jurors. Citing *Ward, supra*, 36 Cal.4th at pages 200-201, defendant asserts the trial court's finding is moot: because the prosecutor justified her challenges anyway, we must examine those justifications. We shall examine the prosecutor's justifications and conclude they demonstrate valid, race-neutral reasons for dismissing the challenged jurors.

Here, the trial court expressly found after both motions that the prosecutor did not need to justify her challenges. But because the prosecutor justified them anyhow, we have a record on which to assess whether her reasons were pretextual. If the record showed she had actually challenged jurors on improper grounds, we could not ignore that fact merely because the trial court thought the challenges proper.

On one point, however, it matters that the trial court did not find defendant had made a prima facie case. Defendant relies heavily on *People v. Silva* (2001) 25 Cal.4th 345(Silva). In *Silva*, the court stated: "Although we generally 'accord great deference to the trial court's ruling that a particular reason is genuine,' we do so only when the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror. [Citations.]" (*Id.* at pp. 385-386.) Defendant asserts that the trial court here failed this test because it made no attempt at all to evaluate the prosecutor's reasoning. We disagree. With respect to the first two jurors, had the trial court found the prosecutor's justifications lacking, it surely would have commented on the same. And the reasons given for dismissal of the third juror were the court's own. Indeed, even after finding a prima facie case the trial court does not always have to probe the prosecutor's justifications in depth: "When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings." (*Id.* at p. 386; accord, *Rice v. Collins* (2006) --- U.S. ----, [126 S.Ct. 969, 973-974].)

Defendant uses two lines of argument: he attacks

ORDER - 7

the good faith of the prosecutor's stated reasons, and he compares the characteristics of the challenged jurors to those of jurors who were not challenged. In evaluating both lines of argument, we must decide whether the prosecutor has given "'reasonably specific and neutral explanations that are related to the particular case being tried.' [Citation.]" (*People v. Reynoso* (2003) 31 Cal.4th 903, 917 (*Reynoso*).) Such explanations may properly be based on counsels' personal observations, including those pertaining to "'prospective jurors' body language or manner of answering questions[ .]' [Citation]." ( Ibid.)

Here, as to prospective jurors B. and W. the prosecutor relied crucially on such factors as "body language" and "manner of answering questions." (*Reynoso, supra*, 31 Cal.4th at p. 917.) As to Juror B., the prosecutor cited his "very short" and "flippant" responses to questioning on sensitive issues, which led her to suspect he was trying to cover up strong feelings, especially about his experiences with divorce and custody proceedings, that could lead to bias in this case. As to Juror W., the prosecutor observed a "scowl" that contrasted with her "engaging" manner, similarly signaling that Juror W. might be trying to conceal her true feelings. Defense counsel did not dispute these observations. FN4 Thus, the record shows the prosecutor could appropriately have relied on these specific, race-neutral grounds to challenge these prospective jurors.

> FN4. Defendant asserts: "No one else ever remarked regarding the alleged scowl." On this record, that does not matter. If trial counsel thought the prosecutor's assertion was false or pretextual, he could have said so.

Furthermore, the prosecutor found it odd that Juror W. did not remember whether a jury on which she had recently served had reached a verdict. FN5 Given that Juror W. was apparently elderly, the prosecutor could reasonably see this failure of memory, if genuine, as a warning signal of potential incapacity to serve in this case. This, too, was a legitimate race-neutral ground for a challenge. Defendant's assertion that it did not bear on Juror W.'s capacity to be fair is irrelevant, and his assertion that it did not bear

ORDER - 8

on her capacity to be "attentive" is misguided.

> FN5. As noted, when asked whether it had done so, Juror W. said: "I believe it did." Defendant disputes the prosecutor's other observations about Juror W.'s account of her service, but not this one.

Finally, the prosecutor was disturbed that Juror W. thought family court matters should be brought into the criminal courts only as a "last resort," because this suggested she might want to hear evidence of what lay behind the events of April 2, 2004, which the parties would not be allowed to present, and might deem the charges baseless or trivial absent such evidence. On this record, we cannot second-guess the prosecutor's conclusion, which neither defense counsel nor the trial court disputed. This, too, was a facially legitimate, race-neutral, case-specific ground for a challenge.

As to Juror D.W., the subject of defendant's second motion, the prosecutor endorsed the trial court's reasons as her own (saying, "The Court read my mind"). Therefore we need not decide whether it was improper for the court to offer these reasons sua sponte, as defendant asserts. His speculation that the prosecutor might have had other, unspoken, racially biased reasons to challenge Juror D.W. is unsupported by the record. The prosecutor's endorsement of the trial court's reasons merely shows that the judge articulated her thoughts before she could utter them. Thus we assess these reasons in the same way as her others.

By endorsing the trial judge's observations as her own, the prosecutor in effect stated her view that Juror D.W. appeared to be still angry and disturbed over events in his family's past that had occurred almost 20 years ago. It was not unreasonable to infer from this fact that he might have emotional difficulty serving on a jury in a case about a bitter family court dispute involving alleged death threats. Juror D.W. himself said at first that he could not put the matter out of his mind, though later he claimed he could. Thus, his history made him a potential wild card or unpredictable as a juror in this case. This, too, was a case-specific, race-neutral ground for a

ORDER - 9

> challenge.
>
> Defendant's attacks on the prosecutor's justifications amount generally to the claim that they could not have been offered in good faith because they did not make sense. First of all, we think they do make sense. Moreover, this is not the standard under Wheeler and *Batson*. "The proper focus of a *Batson/Wheeler* inquiry . . . is on the subjective genuineness of the race-neutral reasons given for the peremptory challenge, not on the objective reasonableness of those reasons. [Citation.] . . . '[A] "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.' " (*Reynoso*, supra, 31 Cal.4th at p. 924.) Even if one or another observation made by the prosecutor might be open to dispute, this is insufficient to prove that her race-neutral reasons were not subjectively genuine.
>
> Defendant's comparative juror analysis is no more successful. He points out that jurors who were seated had also been through divorces and custody proceedings or had been crime victims, like the excluded prospective jurors. But he does not point to anything in the seated jurors' voir dire that reveals the kinds of warning signals the excluded prospective jurors' voir dire set off. Nor did he make a record in the trial court that would have assisted us in comparing the seated and the excluded jurors in this respect. Defendant has failed to show *Wheeler/Batson* error.

(Lod. Doc. 7.)

In order to succeed on his habeas claim, Petitioner must demonstrate that the state court's rejection of his *Batson* claim is contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §§ 2254(d)(1); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).

The United States Supreme Court recently restated the applicable legal standards as follows:

> First, the defendant must make out a prima facie

ORDER - 10

> case "by showing that the totality of the relevant
> facts gives rise to an inference of discriminatory
> purpose." [Citations.] Second, once the defendant
> has made out a prima facie case, the "burden
> shifts to the State to explain adequately the
> racial exclusion" by offering permissible
> race-neutral justifications for the strikes.
> [Citations.] (Ibid.) Third, "[i]f a race-neutral
> explanation is tendered, the trial court must then
> decide . . . whether the opponent of the strike
> has proved purposeful racial discrimination."
> [Citation.]

*Johnson v. California*, 545 U.S. 162, 168 (2005) (fn. omitted)(Johnson).

"The final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" *Rice v. Collins*, 546 U.S. 222, 126 S. Ct. 969, 973 -74 (2006) (citation omitted). The United States Supreme Court also has held that an appellate court should scrutinize a prosecutor's reasons for exercising his or her peremptory challenges and determine whether those reasons were applied equally to other jurors, in order to assess the credibility of the prosecutor's expressed motivations. See *Miller-El v. Dretke*, 545 U.S. 231 (2005).

In this case, the trial court found that Petitioner had failed to make a prima facie case of discrimination, but allowed the prosecutor to justify her challenged on the record. Because the prosecutor's justifications were on the record, the California Court of Appeal did not analyze whether a prima facie case had been made, but proceeded directly to analyze the prosecutor's justifications. (Lod. Doc. 7.) The Court of Appeal held that the justifications demonstrated valid, race-neutral reasons for dismissing the challenged jurors, and it

ORDER - 11

rejected Petitioner's assertion. Id. It also rejected Petitioner's comparative juror analysis, finding that Petitioner had failed to point to anything in the seated jurors' voir dire that revealed the kinds of warning signals that the excluded prospective jurors' voir dire had set off. Id. In analyzing Petitioner's claim, the state Court of Appeal cited and correctly applied the relevant standards set forth in *Johnson*, *Miller-El*, and *Rice*, and it made a reasonable determination of the facts of this case. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**2. California Evidence Code Section 1109 Is Unconstitutional (Ground 2)**

Next, Petitioner asserts that California Evidence Code section 1109 is unconstitutional on its face because it denies a criminal defendant a fair trial in violation of due process. Respondents concede this claim is properly exhausted.

The California Court of Appeal addressed the merits of this claim, and Respondents state it is presumed that the California Supreme Court denied the claims for the reasons addressed by the Court of Appeal (Lod. Docs. 7 and 9.). *Ylst*, 501 U.S. at 803-04. Petitioner fails to show that he is entitled to habeas relief on this claim.

The California Court of Appeal rejected Petitioner's due process claim as follows:

> Defendant contends section 1109 violates constitutional due process as a matter of law. As he acknowledges, the California appellate courts, following the reasoning of *People v. Falsetta* (1999) 21 Cal.4th 903 in upholding Evidence Code section 1108, have uniformly rejected this argument. (*See, e.g., People v. Johnson* (2000) 77 Cal.App.4th 410, 419 [opinion of this court]; People v. Price (2004) 120 Cal.App.4th 224, 240;

ORDER - 12

>           *People v. Escobar* (2000) 82 Cal.App.4th 1085,
>           1095-1097, *cert. den. sub nom. Escobar v.*
>           *California* (2001) 532 U.S. 1053 [149 L.Ed.2d
>           1026]; *People v. Hoover* (2000) 77 Cal.App.4th
>           1020, 1025-1030.) For the reasons stated in those
>           decisions, we likewise reject the argument.

(Lod. Doc. 7.)

Petitioner contends that the trial court violated his constitutional right to due process by admitting evidence of Petitioner's prior acts of domestic violence pursuant to Evidence Code section 1109.[2]

The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001). The Supreme Court instead has expressly left open this question, stating that "[b]ecause we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991); *see also Holgerson v. Knowles*, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted unless due process violation was "clearly established" under federal law as determined by the Supreme

---

[2]California Evidence Code section 1109(a)(1), provides, in pertinent part, as follows: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [California Evidence Code] [s]ection 1101 if the evidence is not inadmissible pursuant to [California Evidence Code] [s]ection 352."

ORDER - 13

Court).

This court concludes that Petitioner has failed to demonstrate that the state court's rejection of his federal due process claim is contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Lockyer*, 538 U.S. at 70-71. Accordingly, Petitioner is not entitled to habeas relief on his due process claim.

**3. Section 1109 Is Unconstitutional as Applied to Him (Ground 3)**

Petitioner further contends that he is entitled to habeas relief because California Evidence Code section 1109 is unconstitutional as applied to him. Respondents argue that Petitioner's claim is procedurally barred and is also without merit. This Court agrees.

The California Court of Appeal addressed this claim as follows:

> Defendant also contends section 1109 is unconstitutional as applied in his case. However, he does not separately head this argument, as required; thus we need not address it. (Cal. Rules of Court, rule 14(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.) In any event, defendant does not make any "as applied" argument that is not simply a restatement of his facial challenge to section 1109.

Again, Respondents state it is presumed that the California Supreme Court rejected this claim for the reasons addressed by the state court of appeal. *Ylst*, 501 U.S. at 803-04. Ct. Rec. 9 at 18.

Respondents argue two points: 1) This claim is procedurally barred since petitioner did not separately head the argument as required by [former] California Rules of Court, rule 14(a)(1)(B), and *Opdyk*, 34 Cal.App.4th at 1830-31, n.4 (1995); and 2) the state court's

ORDER - 14

determination that Section 1109 is constitutional as applied is not contrary to or an unreasonable application of United States Supreme Court precedent.

The claim appears to be procedurally barred. This court, however, finds Respondents' merits argument persuasive. Even though Petitioner's prior domestic acts involved physical violence, they were no more inflammatory than the charged offenses, which involved Petitioner threatening to kill Leshall, his wife, whom he was separated from. (RT 92, 106-107, 111-114, 156.) The prior acts of domestic violence were relevant to show Petitioner made the threats at issue in this case. In addition, the prior acts were within five years of the current offense. It thus is unlikely that the jury would have been so
prejudiced against Petitioner because of Leshall's testimony about Petitioners prior domestic violence.

Additionally, the case against Petitioner was strong. Leshall specifically described Petitioner's conduct and statements, and that she was frightened. (RT 88-112.) Clarida's testimony corroborated Leshall's description of events. (RT 152-159.) The trial court also instructed the jury with CALJIC No. 2.50.02 regarding the proper use of Petitioner's prior domestic violence evidence. (CT 98.) Evidence Code section 1109 thus was not unconstitutional as applied against Petitioner. Moreover, the trial court also admitted the evidence because it was relevant to an element of the criminal threats offense – that the victim reasonably be in fear. (RT 31-5.)

For these reasons, even if the court had erred by admitting the

ORDER - 15

evidence, which this court does not suggest happened, the error did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Accordingly, Petitioner is not entitled to habeas relief on this claim.

**B.     Petitioner's Motion to Amend Petitioner**

Pursuant to Fed. R. Civ. P. 15(a)(2), Petitioner may amend his pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Leave to amend is within the discretion of the district court. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). The district court may deny such a motion if permitting the amendment would prejudice the opposing party, produce an undue delay in litigation, or result in futility. *Id.; see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Respondents oppose Petitioner's request to amend his first petition because it will result in futility and for undue delay. The court agrees as explained below.

At least two claims asserted in Petitioner's second petition, which was filed 1 ½ years after the Answer was filed in this matter, are unexhausted, resulting in a mixed petition that is subject to dismissal. The remaining two claims, *Wheeler/Batson* and constitutionality of California Evidence Code section 1109, are already included in his first unexhausted petition. To allow petitioner to amend his petition constitutes undue delay and could result in the dismissal of the petition based on it being a mixed petition. Accordingly, the motion to amend petition, is respectfully

ORDER - 16

denied.

## III. CONCLUSION

For the foregoing reasons, Petitioner's §2254 Petition, **Ct. Rec. 1**, is **DENIED**. Petitioner's Amended Petition, **Ct. Rec. 11**, is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order, forward a copy to the Petitioner and to counsel for the Respondents, and close file. Judgment shall be entered accordingly.

**DATED** this 6th day of April, 2009.

*s/Lonny R. Suko*

LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER - 17